**Date Signed:**
**September 11, 2024**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>THE MINESEN COMPANY<br><br>Debtor. | Case No.: 19-00849<br>Chapter 11<br><br><br><br>Related: ECF 1110 |

## MEMORANDUM DECISION ON PETER K. MATSUMOTO'S FOURTH AND FINAL APPLICATION FOR COMPENSATION

## A. INTRODUCTION

Peter K. Matsumoto, CPA, seeks a final allowance of compensation in the amount of $132,811.23. The Minesen Company and Pangolin LLC object. At the hearing on the application on August 26, 2024, Simon Klevansky and Alika Piper appeared for the trustee, Ted Pettit appeared for Minesen, Christopher Muzzi appeared for Pangolin, Dana Barbata

appeared for the Army Morale Welfare and Recreation Fund ("MWR"), and Curtis Ching appeared for the Office of the United States Trustee.

My prior orders (ECF 505, 706, 755) state the history of Minesen and this case in detail. I incorporate those decisions in this memorandum.

## B. REQUEST FOR DISCOVERY AND EVIDENTIARY HEARING

The objectors argue that the application presents disputed issues of fact and that therefore the court should allow discovery and hold an evidentiary hearing. Discovery and an evidentiary hearing are appropriate only when the factual disputes are both genuine and material to the relief requested. *In re Brown*, 606 B.R. 40, 51 (B.A.P. 9th Cir. 2019).

It is significant that the objectors have not clearly explained what discovery they would conduct and what evidence they would offer at an evidentiary hearing. *Diaz v. San Jose Unified Sch. Dist.*, 861 F.2d 591, 597 (9th Cir. 1988) (stating that the court is only required to hold an evidentiary hearing when they "offer proof 'sufficiently definite, specific, detailed, and

2

nonconjectural to enable the court to conclude' that a contested issue of fact is in question.").

The objectors offer a one-page letter from a CPA criticizing some of Mr. Matsumoto's fees and work. The letter is vague and nonspecific and is unsworn. It is therefore inadmissible and I could properly disregard it.

The objectors offer the declaration of Mr. Jensen that criticizes the trustee's application and his performance (and indirectly criticizes the work of the trustee's accountant). The trustee has filed his own declaration that contradicts Mr. Jensen's declaration in many respects.

For purposes of this decision only, I will assume (without finding) that Mr. Jensen's and the CPA's factual statements are true. Discovery and an evidentiary hearing will be necessary only if those statements create material issues of fact.

3

## C. MINESEN'S AND PANGOLIN'S OBJECTIONS

### 1. Underpayment of TAT and OTAT

The objectors argue that the court should reduce Mr. Matsumoto's compensation because, for a time, the transient accommodation tax ("TAT") and Oahu transient accommodation tax ("OTAT") withholding was incorrect. They argue that Mr. Matsumoto should have discovered this problem and corrected it earlier.

The historical facts are undisputed. A hotel operator like Minesen must pay a tax on the gross rental proceeds of accommodations rented for less than 180 days to transients. Haw. Rev. Stat. § 237D-3(4) provides that living accommodations for military members "on permanent duty assignment to Hawaii" are exempt from the TAT and OTAT. For many years, Minesen claimed as exempt the rents it received from military personnel on temporary assignment to Hawaii. The trustee continued to report the estate's taxable income and pay TAT and OTAT on this basis, until Highgate, a hotel management company retained by the trustee,

4

pointed out to the trustee that this was incorrect. The trustee and Mr. Matsumoto then took prompt corrective action, cooperated with an audit of the tax returns, and requested a waiver of any penalties and interest. The State of Hawaii Department of Taxation has completed the audit but has not yet acted on the trustee's request for a waiver.

Mr. Matsumoto's conduct was well within the applicable standard. The debtor's staff had reported and paid TAT and OTAT in the same fashion for many years without any complaint from the taxing authorities. Neither Minesen nor its accountants noticed the error. The trustee did not retain Mr. Matsumoto to conduct a complete review of Minesen's historical accounting and tax reporting practices. Mr. Matsumoto provided valuable accounting support to the trustee to correct the problem once it was revealed.

2. **Other Objections**

The objectors argue that Mr. Matsumoto performed simple bookkeeping tasks that could have been performed at lower hourly rates.

5

Professionals should be given latitude to decide on the allocation of work among staff members. It was particularly appropriate for the accountant to do the work himself in this case because Minesen had its own accounting staff who did the bookkeeping. The objectors' vague and unsworn allegations do not create a genuine issue of fact concerning Mr. Matsumoto's exercise of his professional judgment.

The objectors also claim that the estate should not pay the accountant for amending his own work. This objection holds a bankruptcy trustee's accountant to an unreasonably high standard. Bankruptcy trustees and their professionals are dropped into cases because things are going wrong. They have little or no advance preparation. It is absurd to expect them to get everything right on the first try. They should be compensated for the effort it takes to correct mistakes that a reasonable person would have made.

The objectors' statement from the CPA claims that it was improper for Mr. Matsumoto to prepare a compilation statement because he was not

6

"independent since he is performing various accounting duties for the company in regards to the accounting records." Coming from a CPA, this objection is surprising because it fundamentally misstates the nature of a "compilation." In a compilation, the accountant simply puts the financial information reported by the company into the appropriate format. The accountant does not review or opine on the accuracy of that information. A compilation is very different from an audit, where the accountant reviews the accuracy and reliability of the company's financial reporting. An accountant who conducts an audit must be independent. An accountant who prepares a compilation need not. <u>What is the difference among a compilation, review, and audit?</u> AICPA & CIMA https://www.aicpa-cima.com/professional-insights/video/what-is-the-difference-among-a-compilation-review-and-audit ("The CPA does not have to be independent, but the CPA must indicate a lack of independence, if applicable, in the report.").

7

## D. CONCLUSION

I have carefully considered Mr. Matsumoto's application, the objectors' response, and the trustee's reply, and the relevant parts of the entire record of this case. I have taken into account all of the circumstances that are relevant, including but not limited to the following:

1. The time that Mr. Matsumoto spent rendering services was reasonable.
2. The hourly rate charged by Mr. Matsumoto is reasonable.
3. All of the services for which Mr. Matsumoto seeks compensation were necessary to the administration of the case, beneficial when rendered to the completion of the case, or both.
4. Mr. Matsumoto rendered his services within an amount of time that was reasonable considering the complexity, importance, and nature of the problems, issues, and tasks that he addressed.
5. Mr. Matsumoto has extensive experience as a CPA with knowledge of bankruptcy issues.
6. The requested compensation is reasonable compared to the customary charges of CPAs.

Accordingly, I find and conclude that $132,811.23 represents reasonable compensation for Mr. Matsumoto.

**END OF ORDER**

U.S. Bankruptcy Court - Hawaii   #19-00849   Dkt # 1127   Filed  09/11/24   Page 8 of 8