

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re: | Case No.: 19-00849 |
| | Chapter 11 |
| THE MINESEN COMPANY | |
| Debtor. | |
| | Related: ECF 1111 |

# MEMORANDUM DECISION ON THE CHAPTER 11 TRUSTEE'S FIFTH AND FINAL APPLICATION FOR COMPENSATION

## A. INTRODUCTION

The parties are nearing the end of an unduly long and unnecessarily litigious chapter 11 case. After years of struggle and unceasing resistance by The Minesen Company (the debtor), Pangolin LLC (its affiliate), and Max Jensen (the majority owner of Minesen and sole owner of Pangolin), the contracts and leases that are Minesen's principal assets have been saved from termination despite Minesen's many defaults, the court has confirmed

a plan of reorganization, and the plan has become effective. All that remains are requests for allowance of compensation by the professionals involved in the case.

Chapter 11 trustee Dane S. Field seeks a final allowance of compensation in the amount of $335,663.11 and expenses of $2,730.24 for a total of $338,393.35. Minesen and Pangolin object. At the hearing on the application on August 26, 2024, Simon Klevansky and Alika Piper appeared for the trustee, Ted Pettit appeared for Minesen, Christopher Muzzi appeared for Pangolin, Dana Barbata appeared for the Army Morale Welfare and Recreation Fund ("MWR"), and Curtis Ching appeared for the Office of the United States Trustee.

My prior orders (ECF 505, 706, 755) state the history of Minesen and this case in detail. I incorporate those decisions in this memorandum.

## B. REQUEST FOR DISCOVERY AND EVIDENTIARY HEARING

The objectors argue that the application presents disputed issues of fact and that therefore the court should allow discovery and hold an evidentiary hearing. Discovery and an evidentiary hearing are appropriate only when the factual disputes are both genuine and material to the relief requested. *In re Brown*, 606 B.R. 40, 51 (B.A.P. 9th Cir. 2019).

It is significant that the objectors have not clearly explained what discovery they would conduct and what evidence they would offer at an evidentiary hearing. *Diaz v. San Jose Unified Sch. Dist.*, 861 F.2d 591, 597 (9th Cir. 1988) (stating that the court is only required to hold an evidentiary hearing when they "offer proof 'sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude' that a contested issue of fact is in question.").

The objectors offer the declaration of Mr. Jensen that criticizes the trustee's application and his performance. The trustee has filed his own declaration that contradicts Mr. Jensen's declaration in many respects. For

3

purposes of this decision only, I will assume (without finding) that Mr.

Jensen's factual statements are true. Discovery and an evidentiary hearing

will be necessary only if those statements create material issues of fact.

## C. MINESEN AND PANGOLIN'S OBJECTIONS

### 1. The Trustee's Fee Cap

Section 326(a) says that the court may allow to the trustee

"reasonable compensation under section 330 . . . not to exceed" specified

percentages of "all moneys disbursed or turned over in the case by the

trustee to parties in interest, excluding the debtor, but including holders of

secured claims." This section means that the percentage is a cap on the

compensation that the court can award to a trustee.

Section 330(a)(3) instructs that, when determining the reasonable

compensation for a chapter 11 trustee, the court must consider "the nature,

the extent, and the value" of the trustee's services, "taking into account all

relevant factors," including (but not limited to) certain listed factors.

Confusingly, section 330(a)(7) provides that, "in determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326." A "commission" is very different from an allowance of reasonable compensation based on a host of factors. I will reconcile this inconsistency by holding that, because section 330(a)(3) specifically applies to chapter 11 trustees while section 330(a)(7) refers only to the "trustee" generically, section 330(a)(7) applies only to chapter 7 trustees. *Hopkins v. Asset Acceptance LLC (In re Salgado-Nava)*, 473 B.R. 911, 919 (BAP 9th Cir. 2012).

Therefore, chapter 11 trustees are not entitled to a commission. Instead, the section 326(a) percentage sets the maximum compensation allowable to the trustee, and the court must still analyze the reasonableness of his request using the factors stated in section 330(a)(3).

The objectors argue that the trustee has incorrectly calculated the cap.

First, they claim that the trustee's professionals are not "parties in interest" within the meaning of section 326(a), so disbursements of their

U.S. Bankruptcy Court - Hawaii   #19-00849   Dkt # 1128   Filed  09/11/24   Page 5 of 21

compensation and reimbursement are not included when computing the cap. I disagree. "Party in interest" is a broad term. It includes anyone directly affected by a bankruptcy case. *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 144 S. Ct. 1414, 1424 (2024) ("The plain meaning of [party in interest] thus refers to entities that are potentially concerned with or affected by a proceeding."). A person with a right to payment from the estate is a party in interest, whether that right arose before or after the bankruptcy case was commenced. *Mohsen v. Wu (In re Mohsen)*, 506 B.R. 96, 105-06 (N.D. Cal. 2013). Professionals have rights to compensation under section 330, and those rights are treated as administrative claims under section 503(b)(2). Thus, they are parties in interest. *See In re Kohl*, 421 B.R. 115, 130 (Bankr. S.D.N.Y. 2009) (holding that estate professionals are part of the bankruptcy distribution scheme are thus parties in interest).

The objectors argue that "party in interest" must be read more narrowly in section 326 than in other Code sections. It is true that there is no "effectively irrebuttable" presumption that identical words used in

6

different parts of the same statute have the same meaning. *Env't Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007). But the objectors offer no contextual or other reason to give the phase "party in interest" multiple meanings (other than their desire to pay the trustee less).

The objectors contend that payments to postpetition trade creditors do not count towards the trustee's compensation cap because the trade creditors are not parties in interest. This argument makes no sense. Vendors and others who extend credit to a chapter 11 debtor or trustee in the ordinary course of business have administrative claims under section 503(b)(1*). In re Kadjevich*, 220 F.3d 1016, 1019 (9th Cir. 2000) Their right to payment means that they are directly affected by the bankruptcy case and are therefore parties in interest. *See Truck*, 144 S. Ct. at 1426.

The objectors contend that payments made by "the Hotel," the hotel management company retained by the trustee, and the plan disbursing agent are not "moneys disbursed or turned over in the case by the trustee." I disagree. It should not matter whether the trustee cuts the checks himself

7

or relies on an agent. *In re China Fishery Grp. Ltd. (Cayman)*, No. 16-11895 (JLG), 2023 WL 1087064, at *36 (Bankr. S.D.N.Y. Jan. 27, 2023) (holding that all disbursements made with the trustee's authorization, even if made by an agent, count in computing the cap). The contrary rule would give trustees an incentive to become personally involved in clerical work, and that would be unnecessary and inefficient.

In re *Swenning*, 2017 Bankr. LEXIS 1037 (Bankr. N.D. Ok. April 14, 2017), is distinguishable. The debtor in *Swenning* owned 100% of a professional corporation. *Id.* at *2. The professional corporation was a separate legal entity from the debtor. *Id.* Its income and assets were not property of the estate and its expenses were not administrative expenses of the estate. *Id.* at *4. Nevertheless, the chapter 11 trustee argued that the base for the cap should include all disbursements made by the professional corporation. *Id.* at *3. The court rejected this argument because the debtor, not the trustee, continued to control the operations of the corporation and the disbursement of its money, and the trustee disbursed only the portion

8

of the corporation's income that the debtor turned over to the trustee. *Id.* at *4.

This case is more like *China Fishery*, because the trustee operated the debtor's business. 2023 WL 1087064, at *36. The trustee took charge of the operations of the hotel. He allowed Mr. Jensen to act as the hotel manager, but there is no evidence that the trustee ever ceded to Mr. Jensen or anyone else his powers and duties as trustee. (Mr. Jensen's many complaints about the trustee's decisions confirm that the trustee was in charge.) The hotel belongs to Minesen and was property of the estate, so the operating expenses were administrative expenses which the trustee was responsible for paying.

In sum, I conclude that the trustee has correctly computed that the cap on his compensation is $335,663.11.

## 2. The Trustee's Hourly Rate

The objectors contend that the trustee has not adequately justified a rate of $400 per hour. I disagree. The court is its own expert on hourly

U.S. Bankruptcy Court - Hawaii   #19-00849   Dkt # 1128   Filed  09/11/24   Page 9 of 21

rates. *Holland & Hart, LLP, v. Oversight Cttee. (In re Hopkins Nw. Fund LLC)*, 567 B.R. 590, 595 (D. Idaho 2017) (holding that the district court, "like the Bankruptcy Court, is entitled to rely on its years on the bench and familiarity with thousands of cases in evaluating what is a reasonable hourly rate for the services provided in a particular case in the District of Idaho."). Based on my experience in many bankruptcy cases over twenty-two years on the bench and my knowledge of this case from its inception, $400 per hour is a reasonable rate for the trustee, considering the complexity and difficulty of the trustee's assignment and all other relevant factors. (The objectors correctly point out that one of the disbursing agents under the plan charges only $200 per hour, but his duties are not remotely comparable to those of the trustee.)

### 3. The Trustee's Time Records

The objectors argue that the trustee's time records are inadequate. I disagree. Time records are sufficient if they contain the information that the court needs the court to assess the nature and necessity of the tasks

10

performed and the reasonableness of the time expended. *In re Columbia Plastics, Inc.*, 251 B.R. 580, 585 (Bankr. W.D. Wash. 2000). The trustee's timesheets easily meet that standard.

### 4. Filing a Plan

The objectors argue that the trustee should have filed a plan before the objectors did so. This objection borders on the frivolous. No confirmable plan was possible in this case until Minesen assumed its contracts with MWR, because without those contracts Minesen had no business to reorganize. (Minesen failed when it attempted to confirm a plan before completing its assumption and cure of those contracts. ECF 706.) The delay in completing the assumption is mostly attributable to Minesen and Pangolin (although MWR's resistance did not help.) ECF 755. The trustee was correct to focus his efforts on completing the assumption of the contracts, including the retention of Highgate as the hotel manager, before filing a plan. When the objectors filed their own plan the day after the Highgate agreement was approved, the trustee reasonably and

11

appropriately decided to work on fixing the problems with the objectors'
plan rather than file a competing plan.

### 5. Use of Pangolin's Property

The objectors claim that the Trustee wrongfully used Pangolin's
property without paying for it and did not reimburse Pangolin for
expenses it incurred on behalf of the hotel. ECF 1112 at 3-6. For example,
Mr. Jensen declares that he told the trustee that Pangolin, rather than
Minesen, owned two vans, storage space, computers, and maintenance
equipment used by the hotel, that Pangolin demanded payment for the use
of the vans and the storage space and reimbursement for certain hotel
expenses, and that the trustee refused to pay Pangolin.

This is not a basis to reduce the trustee's compensation. The trustee
owes duties to the estate. He does not owe duties to Pangolin. He was not
obligated to simply accede to Pangolin's assertions of ownership and
demand for payment; in fact, it could have been a breach of his duty if he
had just taken Mr. Jensen at his word and begun to pay Pangolin. If

U.S. Bankruptcy Court - Hawaii   #19-00849   Dkt # 1128   Filed  09/11/24   Page 12 of 21

Pangolin wanted to assert its alleged rights, it should have filed a request for payment of an administrative expense or taken other steps in court. But Pangolin did none of those things.

Mr. Jensen declares that the trustee allowed Highgate, the hotel management company retained by the trustee on behalf of the estate, to use computers that Pangolin had bought for the hotel. ECF 1112 at 6-7. He further declares that, after the effective date of the plan, Highgate failed to return the equipment to Pangolin. But the plan (of which Pangolin was a co-proponent) provides that the property of the of the debtor, in possession and out of possession, vested in Minesen on the effective date. ECF 1092 at 52. Therefore, the trustee had no responsibility for any such property after the effective date. Pangolin may (or may not) have claims against Highgate, but it has not stated claims against the trustee (and is not entitled to reduce his compensation) on this score.

Mr. Jensen declares that Pangolin maintained its QuickBooks files on the computers that the hotel used, and that the trustee removed, hid, or

13

deleted those files. ECF 1112 at 7. He also declares that the trustee did not

give Minesen access to its QuickBooks files until July 25, 2024, one month

and one day after the effective date of the plan. But the trustee was not

obligated to turn anything over to Minesen before the effective date.

Highgate, and not the trustee, controlled the computers after the effective

date. Mr. Jensen does not offer any evidence that this delay harmed

Minesen in any measurable way. Therefore, this is not a basis to reduce the

trustee's compensation.

Mr. Jensen declares that Pangolin stored about 200 boxes of "paper

copy files relating to the management of the Inn at the Inn," and that the

trustee "caused [Minesen] to remove or destroy" those records. ECF 1112 at

7-8. Putting aside the questions of why Pangolin, an entity which did not

own and was not authorized to operate the Inn, had such a large quantity

of hard copy records, and why Pangolin was entitled to store those records

at the Inn, Mr. Jensen does not identify or describe the records or explain

how and to what extent the loss of those records harmed Pangolin.

14

### 6. Underpayment of TAT and OTAT

The objectors argue that the court should reduce the trustee's compensation because, for a time, he did not pay the correct amount of the transient accommodation tax ("TAT") and Oahu transient accommodation tax ("OTAT").

The historical facts are undisputed. A hotel operator like Minesen must pay a tax on the gross rental proceeds of accommodations rented for less than 180 days to transients. Haw. Rev. Stat. § 237D-3(4) provides that living accommodations for military members "on permanent duty assignment to Hawaii" are exempt from the TAT and OTAT. For many years, Minesen claimed as exempt the rents it received from military personnel on temporary assignment to Hawaii. The trustee continued to report the estate's taxable income and pay TAT and OTAT on this basis, until Highgate pointed out to the trustee that this was incorrect. The trustee then took prompt corrective action, cooperated with an audit of the tax returns, and requested a waiver of any penalties and interest. The State of

15

Hawaii Department of Taxation has completed the audit but has not yet acted on the trustee's request for a waiver.

The trustee's conduct was well within the applicable standard. The trustee allowed the hotel staff to continue reporting and paying TAT and OTAT as they had done under Minesen's direction for many years without any complaint from the taxing authorities. This was reasonable, and the trustee's prompt reaction when he learned of the error was commendable.

### 7. Operating Decisions

Mr. Jensen declares (ECF 1112 at 10-11) that the trustee did not properly "true up" the electric bills to avoid overcharges by the Army. Mr. Jensen has long suspected that the Army has overcharged the hotel for electricity. But he has never substantiated those suspicions. ECF 505 at 21. The trustee used reasonable business judgment in deciding not to devote his time to the electric bills, particularly where Mr. Jensen has never offered any corroboration for his suspicion that the electric bills were wrong.

16

Further, the reorganized debtor may now take whatever steps it thinks appropriate to true up the electric bills.

Mr. Jensen declares (in summary) that the trustee spent too much money on repairs of the laundry facility and equipment and purchasing linens. ECF 11-12. In essence, Mr. Jensen thinks that the trustee should have followed his advice rather than Highgate's advice. Highgate is a well-qualified professional hotel management company that was embarking on a management contract for the Inn. In contrast, Mr. Jensen's poor decisions forced Minesen to seek bankruptcy protection in order to forestall the cancellation of its principal assets, fought about the assumption of the contracts for several years at great expense and with little success, and contributed to the displacement of Minesen and the appointment of a chapter 11 trustee. Choosing Highgate's advice over Mr. Jensen's was well within the scope of the trustee's reasonable business judgment.

17

### 8. The Trustee's Investigation and Report

The objectors argue that the trustee failed to conduct an adequate investigation and prepare a report as § 1106(a)(3) and (4) require. Based on my review of the time records of the trustee and his professionals and my observation of the trustee's actions in this case, I find that the trustee has investigated Minesen's affairs appropriately and I excuse him from the obligation to conduct a formal investigation and file a formal report.

### D. FEES FOR DEFENDING FEE APPLICATIONS

The objectors claim that under *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 124 (2015), the trustee will not be able to recover its attorney fees for defending his fee application. In *Baker Botts*, the Supreme Court held that the Bankruptcy Code did not displace the American Rule that each party pay its own costs in fee defense litigation. 576 U.S. at 128. But in this case, the confirmed plan, as a binding contract between all the parties in the current dispute, supplants the American Rule. *Id.* at 126; ECF 1092 at 83. The plan (proposed by the objectors) requires the reorganized debtor to

indemnify the trustee and his professionals "against any claim, demand, or cause of action that is barred by the exculpation and release provisions of this Plan[.]" ECF 1092 at 77. Those provisions state that exculpated parties "shall neither have nor incur any liability to any holder of a claim, or to any party in interest in this case, or to the Reorganized Debtor, or Debtor's estate for any act or omission occurring after the Petition Date through and including the Effective Date during and in connection with the administration of this Chapter 11 Case. . ."). ECF 1092 88-89; *see also* ECF 1058. The trustee is an exculpated party. ECF 1092 at 88. The conduct complained of occurred prior to the effective date and was in connection with the administration of this bankruptcy case. Thus, the trustee will be entitled to reasonable fees for defending his fee application.[1]

---

[1] The amount will be determined through a future fee application.

19

## E. CONCLUSION

I have carefully considered the trustee's application, the objectors' response, and the trustee's reply, and the relevant parts of the entire record of this case. I have taken into account all of the circumstances that are relevant, including but not limited to the following:

1. The time that the trustee spent rendering services was reasonable.
2. The hourly rate charged by the trustee is reasonable.
3. All of the services for which the trustee seeks compensation were necessary to the administration of the case, beneficial when rendered to the completion of the case, or both.
4. The trustee rendered his services within an amount of time that was reasonable considering the complexity, importance, and nature of the problems, issues, and tasks that he addressed.
5. The trustee has extensive experience as a bankruptcy trustee, including seventeen years of service as a chapter 7 trustee in this district in both large and small cases.
6. The requested compensation is reasonable compared to the customary charges of chief restructuring officers, receivers, and the like in a nonbankruptcy context.
7. The trustee's compensation probably would have been lower but for Mr. Jensen's failure to cooperate with the trustee and his insistence on excessive litigation and disputation throughout this case.

U.S. Bankruptcy Court - Hawaii   #19-00849   Dkt # 1128   Filed  09/11/24   Page 20 of 21

Accordingly, I find and conclude that $372,944 represents reasonable compensation and $2,730.24 represents reasonable reimbursement of actual, necessary expenses for the trustee. Due to the operation of the statutory cap on the trustee's compensation, I will allow compensation of $335,663.11 plus $2,730.24 of expense reimbursement.

**END OF ORDER**

U.S. Bankruptcy Court - Hawaii   #19-00849   Dkt # 1128   Filed  09/11/24   Page 21 of 21